UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JASON W. MILLER,<br><br>　　　　Plaintiff<br><br>　v.<br><br>JEREMY RUTHERFORD,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:24-CV-01506<br><br>(MEHALCHICK, J.) |
| JASON W. MILLER,<br><br>　　　　Plaintiff<br><br>　v.<br><br>CORRECTIONAL OFFICER RENEE, *et al.*,<br><br>　　　　Defendants. | CIVIL ACTION NO. 3:24-CV-01523<br><br>(MEHALCHICK, J.) |
| JASON W. MILLER,<br><br>　　　　Plaintiff<br><br>　v.<br><br>P.A. ALYSSA HARTRAFT,<br><br>　　　　Defendant. | CIVIL ACTION NO. 3:24-CV-01526<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court are three Complaints filed by Plaintiff Jason W. Miller ("Miller") raising claims pursuant to 42 U.S.C. § 1983, the Federal Tort Claims Act ("FTCA"), and the Americans with Disabilities Act ("ADA") in three separate civil actions all premised on the attempts to remove a ring from the middle finger of his right hand in May of 2023. Considering, all three actions pertain to the same series of occurrences, the Court will

consolidate all three actions under Case No. 24-CV-01506. The Court will screen the three Complaints pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2) and dismiss all the FTCA and ADA claims.

I.  **BACKGROUND AND PROCEDURAL HISTORY**

The Court will now set out the procedural history and summarize the Complaint filed in each separate action.

    A.  CASE NO. 3:24-CV-01506

Miller initiated this action by filing a Complaint, which was receive and docketed by the Court on September 6, 2024. (Doc. 1.) Miller also filed a Motion to Proceed *In Forma Pauperis* and a Certified Prisoner Trust Account Statement. (Doc. 2; Doc. 8; Doc. 9).

The Complaint names Jeremy Rutherford ("Rutherford"), a physician's assistant at the State Correctional Institution Camp Hill ("SCI-Camp Hill"), as the sole defendant and brings claims pursuant to 42 U.S.C. § 1983 and the FTCA. (Doc. 1, at 1). Miller alleges that on May 17, 2023, he arrived at the SCI-Camp Hill and was ordered to remove a ring from the middle finger of his right hand. (Doc. 1, at 4). He states that he was unable to remove the ring due to left side paralysis, and had mentioned that he had worn the ring for over a year. (Doc. 1, at 4). He alleges that several correctional officers and medical staff attempted to remove the ring by the string method and by using a ring cutter, but these did not work. (Doc. 1, at 4). Miller then alleges that Defendant Rutherford called the shift commander asking permission to get angled wire cutters, files, and a Dremmel 3000 power tool. (Doc. 1, at 4). Miller alleges that there was a single piece of gauze against his skin to safeguard against the Dremmel. (Doc. 1, at 4). Miller states that the Dremmel got away from Defendant Rutherford and cut and burned his finger. (Doc. 1, at 4). Miller alleges that he asked him to "please, stop!" for the

2

three hours, approximately, he attempted to remove the ring. (Doc. 1, at 4). After Defendant Rutherford's efforts, he was provided triple antibiotic ointment and escorted back to "R" block. (Doc. 1, at 4). Miller alleges he suffered injury in the form of burns, scarring, and permanent nerve damage. (Doc. 1, at 5). Based on these alleged facts, Miller brings claims of "Enhancement of Damages," negligence, cruel and unusual punishment, and deliberate indifference. (Doc. 1, at 5). Miller seeks relief in the form of ADA damages and compensatory relief. (Doc. 1, at 5).

    B.  CASE NO. 3:24-CV-01523

Miller initiated this action by filing a Complaint with the Court that was received and docketed on September 9, 2024. (Doc. 1). He also filed a Motion to Proceed *In Forma Pauperis* and a Certified Prisoner Trust Account Statement. (Doc. 2; Doc. 6).

The Complaint names Correction Officer Renee ("Renee") and Correction Officer Dowling ("Dowling"), both employed at SCI-Camp Hill, as defendants and raises claims under 42 U.S.C. § 1983 and the FTCA. (Doc. 1, at 1). Miller alleges that after his arrival at SCI-Camp Hill on May 17, 2023, he was directed by correctional officers to remove the ring on his right hand. (Doc. 1, at 4). He was then sent to medical for five hours "to no avail." (Doc. 1, at 4). On May 23, 2024[1], Miller was sent out to the hospital to "UPMC" in Harrisburg per order by P.A. Joscylyn Ramirez. (Doc. 1, at 4). Miller states that he was transported to UPMC accompanied by three correctional officers. (Doc. 1, at 4). He alleges that he was seated in a wheelchair and ordered to wait in adjacent hallway to a waiting room roughly ten yards from the waiting room public restroom. (Doc. 1, at 4). Miller states that Alyssa Hartraft

---

[1] In the other two Complaints discussing the ring removal, Miller states it occurred in 2023. Therefore, the Court views this date as a scrivener's error.

("Hartraft") attempted to use "Raptor scissors" to remove or cut through the ring without success. (Doc. 1, at 4). He then alleges that Defendant Renee was handed the "Raptor scissors" by Hartraft, and "he ended up breaking off edge, or tip of scissors while [Miller] was bleeding in hospital hallway." (Doc. 1, at 4). Miller states that he asked the staff or medical personal to stop and he now as burn scarring, scar, and constant nerve pain in the right hand and fingers after several hors at UPMC on May 23, 2024. (Doc. 1, at 4). Miller states that Defendant Dowling relieved Defendant Renee and grabbed, pulled, squeezed, and twisted at the ring while at UPMC hospital causing pain and trauma after Miller again asked, "please, stop!" (Doc. 1, at 4). Miller alleges injury in the form of nerve damages, scarring, phobias about hospitals, law enforcement, and correctional officers putting hands on or near him. (Doc. 1, at 5). Miller raises claims of negligence, "Enhancement of Damages," cruel and unusual punishment, and deliberate indifference. (Doc. 1, at 5). As relief, Miller requests ADA damages, compensatory relief, and declarative relief, stating "if D.O.C. allows those confined to purchase faith based religious articles, pendants, necklaces, rings, etc. . . regardless of which digit it was placed why the traumatic experience." (Doc. 1, at 5).

  C.  Case No. 3:24-CV-1526

  This action was initiated by Miller filing a Complaint, which was received and docketed by the Court on September 9, 2024. (Doc. 1). Miller also filed a Motion to Proceed *In Forma Pauperis* and a Certified Prisoner Trust Fund Account Statement. (Doc. 2; Doc. 6).

  In the Complaint, Miller named the afore mentioned Hartraft, a physician's assistant at UPMC, as the sole defendant and raises claims pursuant to 42 U.S.C. § 1983 and the FTCA. (Doc. 1, at 1). Miller alleges that on May 23, 2023, Defendant Hartraft tried several times to remove the ring from the middle finger of his right hand using the string method.

4

(Doc. 1, at 4). Miller states that his finger was swollen from the first to the second knuckle. (Doc. 1, at 4). Miller alleges that he told her to "Please, stop!" (Doc. 1, at 4). Miller states that the finger was bleeding and aching from several prior attempts to remove the ring at SCI-Camp Hill. (Doc. 1, at 4). Defendant Hartraft then got the "Raptor scissors," and she still could not cut the ring. (Doc. 1, at 4). Miller states that Defendant Hartraft then handed the "Raptor scissors" to Defendant Renee, who then broke off the end of the "Raptor scissors" under the ring so that the metal was digging into his finger. (Doc. 1, at 4). Miller alleges that staff at UPMC repeatedly tried the string method, ring cutting tools, and another pair of "Raptor scissors," which also broke off underneath the ring. (Doc. 1, at 4). Miller states that he again asked them to "Please, stop!" (Doc. 1, at 4). UPMC called the Harrisburg Fire Department who used a Dremmel tool and cut through the ring. (Doc. 1, at 4). Miller alleges an injury of scarring, nerve pain, and psychological trauma. (Doc. 1, at 5). Miller brings claims of "Enchantment of Damages," negligence, medical malpractice, and cruel and unusual punishment. (Doc. 1, at 5). Miller seeks relief in the form of ADA damages and compensatory relief. (Doc. 1, at 5).

## II. STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. See 28 U.S.C. § 1915(e)(2). In this case, because

Hunter is a prisoner suing a governmental employee and brings his suit *in forma pauperis*, both provisions apply. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal

6

conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d

7

at 347 (citing *Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Iqbal*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.    DISCUSSION**

The Court will consolidate all three actions under Case No. 24-CV-01506. "When actions involving a common question of law or fact are pending before the court," it may order all the actions be consolidated. Fed. R. Civ. P. 42(a)(2). Here, all three Complaints discuss the same serious of occurrences stemming from the attempts to remove Miller's ring in May of 2023 and bring claims under the same legal theories. Therefore, consolidating the actions is appropriate pursuant to Fed. R. Civ. P. 42(a)(2).

The Court will now screen the Complaints pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2).

A. FTCA Claims

On all three Complaints, Miller checked a box on the first page indicating he was bringing claims pursuant to the FTCA.

The FTCA constitutes "a limited waiver of the United States's sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA provides that the United States shall be liable, to the same extent as a private individual, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674.

The United States is the only proper defendant in an FTCA action. *See, e.g., Brownback v. King*, 141 S.Ct. 740, 746 (2021) (explaining that, when Congress passed the FTCA, it waived the sovereign immunity of the United States, so that parties can sue the United States directly for harms caused by its employees); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008), as amended (Sept. 29, 2008), (noting that "[t]he Government is the only proper defendant in a case brought under the FTCA").

Here, the claims are being raised against state actors, not federal actors, and the Complaints fail to name the United Staes as a defendant. Thus, the FTCA claims will be dismissed with prejudice.

B. ADA Damages

Miller seeks "ADA damages" in his prayer for relief. The Court has construed this request as seeking damages under the Americans with Disabilities Act, commonly abbreviated to "ADA." In doing so, Miller failed to state which title of the ADA he premises liability for damages.

Nearly all of the Third Circuit's decisions regarding personal liability under the majority of ADA's titles point toward the absence of individual liability. *See Kokinda v. Pa. Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants did not own, lease, or operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants").

Turning to the issue of individual liability under Title II of the ADA, the Third Circuit has not directly answered the question of whether there can be individual liability under Title II. *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]"). However, other circuit courts of appeals have found no individual liability under Title II. *See Garcia v. S.U.N.Y.*

10

*Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*). In light of the Third Circuit's absence of individual liability under other titles of the ADA, this Court is inclined to follow the trend towards the absence of individual liability under Title II as set forth by the other circuit courts. Therefore, any potential ADA claim arising out of Miller's request for ADA damages will be dismissed with prejudice.

Regardless of any personal liability, Miller failed to properly allege a Title II ADA claim in any of the Complaints. To succeed on a claim under Title II of the ADA, a plaintiff must establish that: (1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability. *Bowers v. National Collegiate Athletic Ass'n,* 475 F.3d 524, 550 (3d Cir. 2007). Here, Miller has failed to allege any of the factors set forth in Title II of the ADA. Thus, the Court's dismissal is appropriate.

### IV.  CONCLUSION

Fore the foregoing reasons, the Court will consolidate all three actions under Case No. 3:24-CV-01506, close Case No. 3:24-CV-01523 and Case No. 3:24-CV-01526, dismiss the FTCA claims and ADA claims with prejudice, and serve the Defendants.

An appropriate Order follows.

Dated: October 25, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**